# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SHELLY A. WILLIAMS,**

        **Plaintiff,**

**-vs-**                                                        **Case No. 6:12-cv-1134-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff applied for a period of disability and disability insurance benefits, alleging that she became unable to work on December 31, 2002 (R. 142-44, 153).[1] The agency denied Plaintiff's application initially and upon reconsideration, and she requested and received a hearing before an administrative law judge ("the ALJ"). The ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 21-44). The Appeals Council declined to grant review (R. 1-5), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely filed her complaint in this action, and the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. The matter has been fully briefed and the case is now ripe for review pursuant to 42 U.S.C. § 405(g).

---

[1] The Commissioner asserts that Plaintiff's prior application was denied on December 14, 2004 (R. 154), and Plaintiff did not pursue reconsideration of that decision. As such, the period of time pertinent to this application is December 2004 to the expiration of her insured status, on December 31, 2007 (R. 153).

## Nature of Claimed Disability

Plaintiff claims disability from her alleged onset to her date last insured (December 31, 2007) due to pain from a knee, back and hip injury (R. 158), and resulting fatigue and depression (R. 172).

*Summary of Evidence Before the ALJ*

Plaintiff was forty-seven years of age on her date last insured, with a high school education and past relevant work as a server/waitress, deli clerk and office clerk (R. 38).

The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections.[2] In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert ("the VE"), written forms and reports completed by Plaintiff, and opinions from non-examining consultants. By way of summary, the ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease of the left knee, degenerative disc disease of the lumbar spine, polyneuropathy, left peroneal nerve injury and major depressive disorder (20 CFR 404.1520(c)) (R. 26); and the record supports this uncontested finding. The ALJ determined that through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 26-28). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work as defined in 20 CFR 404.1567(a) except with opportunity to alternate from sitting to standing every hour for 5 minutes while on task; no climbing ladders, ropes, or scaffolds, kneeling or crawling; occasional climbing stairs, stooping and crouching; no exposure to dangerous moving machinery or work at unprotected heights; 1-3 step non

---

[2]As Plaintiff notes, there is evidence after the date last insured, but "only records during the relevant period, from the alleged onset date through the date last insured, will be outlined in the brief." (Doc. 16, n. 1).

complex tasks with only occasional change in the work setting and concentration limits to periods of 2 hours at a time." (R. 28). The ALJ determined that Plaintiff could not return to her past relevant work (R. 38); however, with the assistance of a vocational expert, the ALJ found that other work existed in significant numbers that Plaintiff could perform (R. 39), and therefore, the ALJ found Plaintiff was not disabled (R. 40).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises two issues on review, challenging the ALJ's formulation of the RFC and the credibility finding. The Court examines these objections in the context of the sequential evaluation applied by the ALJ.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Plaintiff's objections go to the formulation of the RFC (steps two and three), where the burden of persuasion rested with Plaintiff.

*The formulation of the RFC*

Plaintiff contends that the ALJ erred in determining that she has the RFC to perform sedentary work "after failing to adequately consider and weigh all of the pertinent medical evidence." (Doc. 16). Specifically, Plaintiff contends that the ALJ: 1) did not consider the opinion of Dr. Masson, one of the treating physicians; and 2) "the ALJ makes the determination that the claimant could [perform]

-4-

1-3 step non complex tasks with only occasional change in the work setting and concentration limits to 2 hours at a time without any support for this conclusion from a medical provider." *Id.*

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir.1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1)

length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

To the extent the treatment records of Dr. Masson are opinions under *Winschel*, the ALJ discussed the treatment records from this doctor, in detail (R. 34-35). Plaintiff does not dispute this, but argues that the ALJ failed to credit or discuss a form report (R. 255), which she describes as containing Dr. Masson's opinion that Plaintiff could not perform even sedentary work. A review of the report shows no such opinion.

The form is signed by Wayne Gardner, PA-C, and not by Dr. Masson. Thus, the opinion is that of Mr. Gardner, a physician's assistant. A physician's assistant's opinion is not "an acceptable medical source" and "cannot establish the existence of an impairment." *Johnson v. Astrue*, No. 3:07–cv–424–J–TEM, 2008 WL 4456749 at *5 (M.D. Fla. Sept. 30, 2008). While a physician's assistant's opinion may be considered when determining the severity of a claimant's impairment and how it affects the claimant's ability to work, 20 C.F.R. § 404.1513(d), as the Commissioner notes, a report of a physician's assistant is not a medical opinion and is not entitled to particular deference. *See* SSR 06-03p (citing 20 C.F.R. §404.1527(a) and (d) and stating "only 'acceptable medical sources' can give us medical opinions" and that "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight").

Moreover, the report is a simple check-box statement that: "The injured worker's functional limitations and restrictions, identified in detail below, are of such severity that he/she cannot perform work, even at a sedentary level, at this time..." (R. 255). Despite an explicit reference to limitations and restrictions "identified in detail below," no functional limitations or restrictions are listed in the form, nor is there any indication that these unidentified restrictions are anything other than temporary

-6-

("at this time"). At best, this form is a bare conclusion from a non-physician on matters that are reserved for the Commissioner.[3] Under these circumstances, the form is not a medical opinion entitled to deference, and the ALJ was not required to explicitly analyze it as such under *Winschel*.

Plaintiff's second contention is that the ALJ erred in that the mental limitations in the RFC are without support from a medical provider. Plaintiff's argument on this point reads, in its entirety:

> Additionally, the ALJ makes the determination that the claimant could 1-3 step non complex tasks with only occasional change in the work setting and concentration limits to 2 hours at a time without any support for this conclusion from a medical provider. (Transcript 28). But, the ALJ cannot come to her own conclusions regarding the limitations of the claimant, and cannot substitute her judgment for that of the medical and vocational experts. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). Overall, the ALJ should not have reached his own determination of the RFC when other contrary opinions were in the record. Accordingly, the ALJ has committed an error in this case.

(Doc. 16, p. 12).

As noted by the Commissioner, to the extent Plaintiff appears to contend that the RFC must mirror the opinion from a medical provider, she is mistaken. As Plaintiff herself acknowledges (Doc. 16, pp. 10-11), "[t]he residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 CFR § 404.1545(a)." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). As such,"[a]n opinion on an applicant's RFC is not a medical opinion, but rather a decision reserved to the Commissioner, to be based on medical sources, and the physician's opinion in this respect is not entitled to deference. 20 C.F.R. §§ 404.1527(e), 416.927(e)." *Shaw v. Astrue* , 392 Fed.Appx. 684, 687 (11th Cir. 2010); *see also Majkut v. Commissioner of Social Sec*., 394 Fed.Appx. 660, 664 (11th Cir. 2010) ("An

---

[3] A medical source opinion that an individual is "disabled" or "unable to work," has an impairment(s) that meets or is equivalent in severity to the requirements of a listing, has a particular RFC, or that concerns the application of vocational factors, is an opinion on an issue reserved to the Commissioner. Every such opinion must still be considered in adjudicating a disability claim; however, the adjudicator will not give any special significance to the opinion because of its source. See SSR 96–5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner."
SSR 96–8p, footnote 8.

opinion on an applicant's RFC is not a medical opinion, but rather a decision reserved to the Commissioner, to be based on medical sources. 20 C.F.R. § 404.1527(e)(2)."). Moreover, "[t]he task of determining a claimant's ability to work is within the province of the ALJ, not a doctor . . ." *Cooper v. Astrue,* 373 Fed.Appx. 961, 962 (11th Cir. 2010); *see also Green v. Social Sec. Admin.,* 223 Fed.Appx. 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ. 20 C.F.R. §§ 404.1513, 404.1527, 404.1545."). As is clear, it is not error for the ALJ to reach "her own conclusions" with respect to the RFC of a claimant.

Here, the ALJ reviewed the medical and other evidence of record, and came to a conclusion that Plaintiff had the RFC for sedentary work, with additional limitations. To the extent Plaintiff contends that the RFC with respect to task complexity and limits in concentration is not based upon substantial evidence and the ALJ improperly "substituted" her judgment for that of the medical providers, the Court is unpersuaded. In her decision, the ALJ discussed the medical evidence related to Plaintiff's mental health treatment (R. 30-32). The ALJ noted the psychiatric evaluation performed by Maria Lozano, M.D., and the counseling treatment notes, and summarized those records, acknowledging findings of depression but also noting that Plaintiff's mental status examinations revealed that she was cooperative, her speech and thought process and content were normal, there was no evidence of looseness of associations or flight of ideas, she had no suicidal or homicidal ideation and no overt paranoia, she was alert and oriented, her memory and insight were fair, and her cognitive functions were within normal limits (R. 30-32). These findings are accurately described and well supported in the record (R. 320-74, 377). The ALJ also noted and credited the opinion of state agency psychologist, Bruce Hertz, Ph.D., as being "consistent with the mental treatment records" (R. 37-38, 457). The ALJ explained:

>   Concerning the claimant's mental impairments, the claimant was also treated for depression since 2005 (Exhibits 4F and 9F), and diagnosed with Major Depressive Disorder, but there was no mental health hospitalization during the period at issue, and the **mental health treatment records Global Assessment of Functioning scores do not suggest a disabling level of symptomatology and/or difficulty in functioning** (Exhibit 4F). There was weight loss, but the claimant was noted to be eating well and looking well with weight being under excellent control (Exhibit 7F). There is worsening of the claimant's mental condition indicated at admission in October 2009 (Exhibit 2lF), but this is far after the date last insured. The undersigned has considered the State Agency psychologist opinion regarding the claimant's mental impairment. Dr. Hertz concluded that the claimant had mild restriction of activities of daily living, no difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace without episodes of decompensation (Exhibit llF). Dr. Hertz indicated that the claimant clearly emphasized limitations connected with her pain problems, and made it quite clear that **any difficulties connected with depression and/or decreased cognitive ability was directly tied to changes with regard to the pain levels. Her pain level also determined the degree of difficulty with concentration and memory. If within her physical ability, Dr. Hertz concluded that the claimant had the mental capacity to understand and carry out at least simple instructions and tasks**, and could carry out all routine household chores and self- care tasks. While she did not socialized a great deal because of her pain problems, she did have the ability to get along with people well enough to take care of necessary daily responsibilities. She reported some increased irritability. Dr. Hertz opined that the overall indication was that **while there were some mental deficits present, they would not prohibit the claimant from carrying out at least routine daily functions independently** (Exhibit l2F). The undersigned accords significant weight to this opinion as it is consistent with the mental treatment records (SSR 96-6p).

(R. 37-38, emphasis added). Thus, the ALJ did not "substitute" her opinion for that of the medical providers; rather, she cited to and relied upon the treatment notes of the providers and the opinion of the consultant in formulating Plaintiff's RFC.[4] The RFC with respect to the mental limitations is therefore "based on medical sources."

*Credibility*

---

[4] Additionally, the ALJ discussed the side effects of Plaintiff's pain medications, including her complaints of drowsiness and lack of focus (R. 37). The ALJ *credited* those allegations, and noted: "Mental limitations in task complexity and concentration have been included in the residual functional capacity that are consistent with some degree of drowsiness and lack of focus due to medications." *Id.*

-9-

Plaintiff's last contention is that the ALJ erred in finding that she was not credible, when the record "clearly reveals that [she] suffered from documented impairments causing significant limitations." (Doc. 16, p. 13).

There is no issue regarding whether Plaintiff is significantly limited – at issue is whether she is disabled.[5] The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment" (R. 28-29). Plaintiff contends that in making this finding the ALJ failed to apply the appropriate legal standards in that "the ALJ's credibility determination is nothing more than a stock, boiler plate paragraph offering no reasoning for finding the claimant not to be credible." (Brief, p. 13). Thus, argues Plaintiff, the conclusion of the ALJ that the Plaintiff is "not credible" is not supported by substantial evidence in the record.

A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

---

[5] In her decision, the ALJ noted that she "agrees that the claimant is significantly limited, but not disabled." (R. 38).

In her decision, the ALJ set forth several reasons why Plaintiff's allegations of disabling impairments were not credible, detailing numerous normal or mild findings on objective testing; "fairly benign" physical findings on examinations; reports that she was "doing well" on her medication; and citing daily activities "which are not inconsistent with a range of sedentary work." (R. 36-37). [6] As these reasons are supported by the substantial record evidence cited by the ALJ, the credibility finding comports with the legal standard.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it must affirm the decision.

---

[6] The ALJ detailed the findings and opinions of the treating providers, noting, in part: "The claimant underwent fusion surgery in June 2003, and her back surgeon found maximum medical improvement in November 2004 and restricted the claimant to avoid repetitive bending, twisting, prolonged standing/ walking/squatting, climbing and lifting more than 10 pounds (Exhibit 17F). She also underwent knee surgery, but in January 2005, her treating physician noted that her knee MRI was normal for age and nothing about the knees precluded work, suggesting that possibly fibromyalgia was the problem (Exhibit 15F). A rheumatology evaluation found no evidence of fibromyalgia (Exhibit 16F). The claimant reported ongoing lower extremity symptoms, but imaging reports showed no focal disc pathology or spine cord impingement (Exhibit SF). She was diagnosed with peripheral neuropathy per electrodiagnostic testing (Exhibits 2F, 3F and 19F), but medical records do not reflect a persistent neurological deficit on physical examination and it was concluded that no further surgery was needed. The claimant was referred for pain management and in May 2006, she was noted to be doing well on methadone, Neurontin and Gabritril (Exhibit 5F). There was some exacerbation in September 2006 and an independent medical evaluation noted failed back syndrome with medication dependence and the need for a narcotic withdrawal program (Exhibit 18F). However, physical findings remained fairly benign. The claimant's treating physician findings in September 2006 noted gait was normal and there was full strength and negative straight leg raise (Exhibit SF). In September 2006, initial complex comprehensive consultation, the claimant was able to walk with a tandem, heel, and toe gait. In February 2008, shortly after the date last insured, the claimant was described as in good spirits, no acute distress, mild to mod decreased range of motion, can squat, negative straight leg raise, and ambulating (Exhibit 5F). In April 2008, there was overall good control of symptoms, but with a recent flare; by July 2008 minimal acute radicular pain was described (Exhibit 8F)." (R. 36-37). The ALJ also noted that none of the treating providers submitted an opinion that Plaintiff was unable to perform a limited range of light work (R. 38).

## Conclusion

The administrative decision was made in accordance with proper legal standards and is supported by substantial evidence. It is therefore **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 5, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record